**KOVAR, Plaintiff-Appellant, v. CLEVELAND (City), Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22025.   Decided February 26, 1951.

H. J. Dworkin, Cleveland, for plaintiff-appellant.
Lee C. Howley, Director of Law, Jas. M. McSweeney, Asst. Director of Law, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered on behalf of the defendant.  The plaintiffs' petition prays for an order restraining the defendants from disposing of dogs, taken and placed in the pound of the City

Dog Warden under the provisions of Sec. 2911-1 and 2911-3 of the Municipal Code of Cleveland, by giving or selling them to hospitals or laboratories for experimental and research purposes.

The trial court sustained the defendant's demurrer to the plaintiffs' petition and the plaintiffs not desiring to plead further entered final judgment for the defendant.

The plaintiffs' petition, after general allegations setting forth the corporate authority of the City of Cleveland and the qualifications of the Mayor and the Safety Director, alleges that this action is brought by the plaintiffs as taxpayers after a request in writing upon the Director of Law, and his refusal to bring suit to enjoin the City of Cleveland and its authorized officers from collecting, harboring, selling and giving away dogs to hospitals, clinics and laboratories for experimental purposes.

The plaintiffs then set forth the provisions of Sec. 2911-3 of the Municipal Code of Cleveland dealing with the disposition of unclaimed dogs placed in the pound, because they were found unmuzzled as provided by Sec. 2911-1 of the Municipal Code of Cleveland. It is then alleged that the Director of Public Safety issued an order to the Dog Warden directing that unredeemed stray dogs be sold or given to hospitals and laboratories for research or experimental purposes; that until they are so disposed of, tax funds are expended in collecting such dogs from the streets of the City, and in housing them and maintaining them until disposed of. That since July, 1947, over 2000 dogs have been thus made available to hospitals and laboratories for experimental purposes.

The petition further alleges that the unauthorized and illegal operation of said business of procuring dogs for public institutions is an expense to the taxpayers and constitutes a waste and misapplication of public funds. That §3633 GC, authorizing City Council to provide by Ordinance to collect and dispose of stray dogs, running at large, was passed for the protection of the public, and was not intended to authorize and does not authorize the City to engage in large scale commercialization of the collection and sale of such dogs to hospitals and other institutions for purposes of vivisection * * *"

The petition further alleges that Section 2911-3 of the Municipal Code of Cleveland does not empower the Dog Warden to deliver unredeemed impounded stray dogs to hospitals or laboratories for experimental purposes and that any attempt to do so is without authority and constitutes

a gross abuse of discretion by such public officer. The petition further alleges that the plaintiffs have no adequate remedy at law and prays that the City, the Mayor and the Safety Director be enjoined from collecting, procuring, maintaining, selling and/or giving away dogs to hospitals and laboratories.

To this petition, the defendants filed a demurrer alleging that it did not state a cause of action, which demurrer was sustained by the trial court. The plaintiffs then indicated to the court that they did not desire to plead further, whereupon the court dismissed the petition and entered judgment against the plaintiffs for costs.

Plaintiffs claim the following errors:

1. In sustaining the defendant's demurrer.

2. In dismissing plaintiffs' petition and entering final judgment in favor of the defendants.

To determine whether or not a cause of action is stated we will first examine the statutes of Ohio dealing with the subject.

Sec. 5652-9 GC provides:

"Dogs not wearing valid registration tags which have been seized by the county dog warden, and impounded as hereinbefore provided, shall be kept, housed and fed for three days, at the expiration of which time, unless previously redeemed by the owners thereof, such animals shall either be sold or humanely destroyed; provided, however, that no dogs so sold shall be discharged from said pound until such animal shall have been registered and furnished with a valid registration tag as hereinbefore provided. A record of all dogs impounded, the disposition of the same, the owner's name and address, where known, and a statement of costs assessed against such dogs, as hereinafter provided, shall be kept by the pound keeper and a transcript thereof by him furnished to the county treasurer quarterly."

This section is found in Part Second, Title I, dealing with the Taxation and is a part of Chapter 12 of such Title, headed "Levying Taxes." The sections just preceding §5652-9 GC deals with the registering of dog kennels, and also the registering of dogs, providing the manner in which registrations shall be accomplished and the fees to be charged. These sections also provide that each dog shall wear a metal tag evidencing that it has been registered. Failure to wear such tag is prima facie evidence of lack of registration and if so found, the dog shall be subject to impounding, sale, or destruction as provided by §5652-9 GC.

The City of Cleveland is a Home Rule city under Section 3 of Article XVIII of the Constitution of Ohio. It is there-

fore empowered to enact all local police, sanitary and other similar regulations as are not in conflict with the general law.

Secs. 2911-1 to 2911-3 inclusive, provides for the muzzling of dogs by owners when they are permitted to run at large, and providing further that police officers and dog wardens of the City shall impound any dogs found at large unmuzzled in the public highways, parks, buildings or other public places.

Section 2911-3 of the Municipal Code of Cleveland is as follows:

"It shall be the duty of the police officers and dog wardens of the City of Cleveland when any unmuzzled dog is found at large in the public highways, public parks, public buildings or other public places in violation of §2911-1 to take up and impound such dog in a city pound. No dog shall be released from the pound until the cost of taking up, impounding and keeping said dog is paid to the city, in an amount to be fixed by or under the authority of the director of public safety, which in no event shall be less than two dollars ($2.00). Any dog unredeemed after five (5) days from the time of being taken and impounded may be destroyed or otherwise disposed of upon the order of the director of public safety; but if such dog has a license number, an effort shall be made to locate the owner immediately upon taking up of such dog. The payment of charges for redeeming a dog from pound, shall not be construed to exempt the owner of such dog, from prosecution under the provisions of §2911-1 and §2911-2 hereof. (Ordinance No. 74612; Passed July 6, 1926. Effective August 16, 1926.)"

This Ordinance is one dealing with the public health and safety of the citizens of Cleveland and comes clearly within the proper exercise of the police power conferred upon the City by **Section 3 of Article XVIII of the Constitution.**

Even if this were not true, §3633 GC confers upon all municipal corporations the power to deal with the danger and annoyance of dogs running at large.

**Sec. 3633 GC** provides:

"To regulate, restrain and prohibit the running at large, within the corporation, of cattle, horses, swine, sheep, goats, geese, chickens and other fowls and animals, and to impound and hold them, and on notice to the owner, to authorize the sale of them for the penalty imposed by any ordinance, and the cost and expenses of the proceedings; to regulate or prohibit the running at large of dogs and provide against injury and annoyance therefrom and to authorize the disposition of them when running at large, contrary to the provisions of any ordinance."

This section of the General Code of Ohio is a part of Title 12 dealing with Municipal Corporations, and is found in Division II "General Powers, Chapter 1, Enumerated Powers." This section directly authorizes a municipal corporation "to regulate and prohibit the running at large of dogs and provide against the injury and annoyance therefrom, and to authorize the disposition of them when running at large, contrary to the provision of any ordinance."

Both by its constitutional right of home rule and by the powers conferred upon municipal corporations by §3633 GC, the City of Cleveland has the right, in the interest of the safety and health of its citizens to provide that no dog should be permitted to run at large unless muzzled and to provide that any dog found at large unmuzzled should be impounded. The City has the right to impound unmuzzled dogs even though they may have been registered under the provisions of the General Code of Ohio dealing with that subject hereinabove referred to.

The ordinance provides that if such dog is licensed, by which is meant "registered," an effort should be made to contact the owner, giving the owner five days in which to redeem his dog, upon paying the cost of impounding and keeping him which in no case shall be less than two dollars ($2.00). If the dog is not redeemed within five (5) days, then he "may be destroyed or otherwise disposed of upon the order of the director of public safety."

The plaintiff's petition also charges that the dog warden is collecting dogs in large numbers for hospitals and experimental laboratories. There is no claim that the dogs taken by the Dog Warden were muzzled or that their impounding was unlawful. The fact that large numbers of unmuzzled dogs were found running at large evidences the need for the protection of the public afforded by the ordinance.

The claims of the plaintiff, therefore, cannot be founded upon the number of dogs taken, so long as those that were impounded were running at large, unmuzzled.

There remains but one question as to whether or not a cause of action is stated under the ordinance and that is, whether or not the authority conferred upon the director of public safety to destroy or otherwise dispose of dogs impounded under the ordinance confers upon such officer the power to give or sell dogs impounded to hospitals or laboratories for experimental purposes.

It is the claim of plaintiffs appellants that the means of "otherwise disposing of dogs" must be spelled out in definite terms by the City Council and that because of the failure

of the Council to define the limits of the safety director's duties, this part of the ordinance constitutes an attempt to invest the safety director with legislative power.

It should be noted in passing, there is no allegation in the petition that the safety director is acting inhumanely in the disposition of the dogs impounded under the authority of the ordinance. If the City Council desires to define more specifically the means of disposing of dogs impounded it is their duty to do so. Such matter is for the consideration of the City Council and not the courts.

Carrying out the mandate of the ordinance in "otherwise disposing of dogs" legally impounded is in fact the performance of a ministerial or administrative duty. The safety director in performing such duty must act in good faith to accomplish the work delegated to him. Circumscribed only by the necessity of due diligence and compliance with all general rules, and laws in the conduct of the work which would include §13376 GC, dealing with the subject of cruelty to animals, the safety director is, by the ordinance, empowered to dispose of dogs impounded and not called for, to the best advantage possible.

The right to delegate such duty to the director of public safety is supported by the following authorities.

In the case of **Yee Bow v. Cleveland, 99 Oh St 269,** the action was to restrain the City of Cleveland from enforcing a city ordinance regulating certain laundries. The ordinance provides in part that public laundries cannot be maintained or operated without a license from the commissioner of assessments and licenses, to whom applications were required to be made. These applications were then transmitted to the health commissioner of the city for investigation and report. Thereupon the health commissioner was required to make an examination of the premises for the purpose of ascertaining whether the location, construction and ventilation of such laundries and the sanitary and drainage arrangements thereof were 'sufficient to properly protect the public health and the health of the persons to be employed in such proposed laundry.' Among other requirements provided for in said ordinance was the requirement that 'all rooms used in connection with such laundry shall be provided with adequate ventilation by means of windows, air-shafts, air-ducts or other mechanical apparatus, if needed, so as to at all times insure a free circulation of fresh aid in such laundry.'

The court held in the third paragraph of the syllabus:

"3. An ordinance imposing on an administrative officer as a prerequisite to the issuance of a license, the duties of

ascertaining whether sanitary and drainage arrangements are sufficient to protect the public health and whether 'adequate ventilation' and 'adequate plumbing and draining facilities' are provided on the premises, does not confer arbitrary legislative or judicial powers upon such officer in a constitutional sense. If his conduct should prove to be arbitrary or palpably unwarranted, resort may be had to the courts."

See also: **State ex rel Moock v. Cincinnati, 120 Oh St 500; 28 O. Jur. page 108, Sec. 68.**

We conclude, therefore that the court was not in error in sustaining the demurrer of the defendant.

Judgment affirmed. Exc. Order see journal.

HURD, J, McNAMEE, J,concur.